IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ISMAEL FELIX ROSARIO, | : | No. 3:24cv2255 |
| | : | |
| Plaintiff | : | (Judge Munley) |
| | : | |
| v. | : | |
| | : | |
| SUPERINTENDENT SALAMON, et al., | : | |
| | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Ismael Rosario ("Rosario"), an inmate in the custody of the

Pennsylvania Department of Corrections ("DOC"), initiated this pro se civil rights

action pursuant to 42 U.S.C. § 1983, against Superintendent Salamon and

Lieutenant Wooster.  (Doc. 1).  Defendants previously moved for judgment on the

pleadings.  (Doc. 18).  By memorandum and order dated October 30, 2025, the

court granted defendants' motion for judgment on the pleadings and granted

Rosario leave to amend.  (Docs. 34, 35).

In response to the court order, Rosario filed an amended complaint.  (Doc.

36).  Named as defendants are Superintendent Salamon and Lieutenant Wooster

(together, the "moving defendants"), as well as Correctional Officer John Doe,

Major Joe Roe, Correctional Officer Bailer, Correctional Officer Cessna, Deputy

Superintendent for Centralized Services M. Rowe, Deputy Superintendent for

Facilities Management S. Woodring, Corrections Classification and Program Manager T. Miller, Unit Manager C. Miller, and Correctional Officer Hoover. (Id. at 2-3).

Before the court is the moving defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 37). Rosario failed to respond to the motion and the time for responding has now passed.[1] Therefore, the motion is deemed unopposed and ripe for resolution. For the reasons that follow, the court will grant the motion. In addition, the court will sua sponte dismiss the amended complaint for failure to state a claim against the remaining defendants pursuant to the authority granted courts by 28 U.S.C. §§ 1915A and 1915(e)(2).

## I.    **Allegations of the Amended Complaint**

At all relevant times, Rosario was housed at the State Correctional Institution, Rockview ("SCI-Rockview"). (Doc. 36, at 3). Rosario alleges that, on April 17, 2024, defendant Wooster informed him that he was being placed in administrative custody due to an alleged threat to Rosario's safety. (Id.). Defendant Wooster allegedly ordered Rosario to be placed in the Restricted Housing Unit ("RHU"). (Id.). The SCI-Rockview Security Team transported

---

[1] Rosario was directed to file a brief in opposition to defendants' motion and was admonished that failure to file an opposition brief would result in the motion being deemed unopposed. (Doc. 39) (citing LOCAL RULE OF COURT 7.6).

Rosario to the RHU and placed him in a cell with a cellmate. (Id.). Rosario alleges that defendant Wooster failed to place him in a single cell, despite the alleged threat to his safety. (Id. at 4).

On April 18, 2024 and April 25, 2025, the Program Review Committee, consisting of defendants Rowe, T. Miller, and C. Miller, reviewed Rosario's custody status and allegedly "failed to take any action to house Rosario alone." (Id.).

On May 2, 2024, the Program Review Committee, consisting of defendants Rowe, T. Miller, and Hoover, again reviewed Rosario's custody status and allegedly failed to "take any action to house Rosario alone." (Id.).

On an unspecified date, Rosario alleges that defendants Rowe, T. Miller, and Woodring continued his placement in administrative custody and "failed to take any action to house Rosario alone." (Id. at 5).

Rosario alleges that on May 16, 2024, defendant Bailer issued a DC-141, part 1 report, indicating that Rosario was in danger due to verified threats by inmates in general population. (Id. at 4). The following day, on May 17, 2024, defendant Cessna allegedly issued a DC-141, part 1 report, indicating that Rosario was in danger due to verified threats by inmates in general population.

(Id.).  Rosario alleges that defendants Bailer and Cessa "failed to take any action to house Rosario alone."  (Id.).

Rosario further alleges that defendant Salamon "allowed [a] practice and procedure" to house prisoners in administrative custody with cellmates despite known threats to their safety.  (Id. at 5).

On June 10, 2024, Rosario was allegedly assaulted by his cellmate and sustained injuries during the assault.  (Id.).

Based on these allegations, Rosario sets forth an Eighth Amendment claim against the defendants based on their alleged failure to protect him from danger presented by another inmate, and he also sets forth a Fourteenth Amendment equal protection claim.  (Id.).

## II.   Legal Standards

### A.   Federal Rule of Civil Procedure 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for the dismissal of complaints that fail to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6).  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept as true all [factual] allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir.

4

2007) (quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).  Although the court is generally limited in its review to the facts contained in the complaint, it "may also consider matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case."  Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n. 2 (3d Cir. 1994); see also In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997).

Federal notice and pleading rules require the complaint to provide "the defendant notice of what the…claim is and the grounds upon which it rests." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6) motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 675 (2009)).  Next, the factual and legal elements of a claim should be separated; well-pleaded facts must be accepted as true, while mere legal conclusions may be disregarded.  Id.; see also Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-pleaded factual allegations have been isolated, the court must determine whether they are sufficient to show a "plausible claim for

5

relief." Iqbal, 556 U.S. at 679 (citing Twombly, 550 U.S. at 556); Twombly, 550 U.S. at 555 (requiring plaintiffs to allege facts sufficient to "raise a right to relief above the speculative level"). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

B.    28 U.S.C. §§ 1915A and 1915(e)(2)

Under Section 1915A, "[t]he court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A. Additionally, in civil actions initiated with in forma pauperis motions, the court may properly dismiss an action sua sponte under the provisions Section 1915(e)(2)(B). See Ball v. Famiglio, 726 F.3d 448, 452 (3d Cir. 2013), partially abrogated on other grounds by Coleman v. Tollefson, 575 U.S. 532 (2015).

Pursuant to both Sections 1915(e)(2) and 1915A, the court shall dismiss a case if it determines that the action: (1) is frivolous or malicious, (2) fails to state a claim on which relief may be granted, or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B)(i)-(iii), 1915A(b)(1)-(2). Reading both statutes together, Section 1915A(a) directs the

court to screen a prisoner complaint on these grounds either before docketing or as soon as practicable after docketing.  Section 1915(e)(2) allows a court to dismiss a complaint on the above grounds at any time.

When screening a plaintiff's complaint, district courts apply the same standard governing motions to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6).  See Smithson v. Koons, No. 15-cv-1757, 2017 WL 3016165, at *3 (M.D. Pa. June 26, 2017); Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999) (applying the Rule 12(b)(6) standard for dismissal for failure to state a claim under § 1915(e)(2)(B)).

C.    42 U.S.C. § 1983

Section 1983 is the vehicle by which private citizens may seek redress for violations of federal constitutional rights committed by state officials.  See 42 U.S.C. § 1983.  The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

"Section 1983 is not a source of substantive rights," but is merely a means through which "to vindicate violations of federal law committed by state actors." See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)).  To state a cause of action under Section 1983, a plaintiff must allege that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

## III.    Discussion

### A.    Eighth Amendment Failure to Protect Claim

"[T]he Eighth Amendment's Cruel and Unusual Punishments Clause imposes on prison officials 'a duty to protect prisoners from violence at the hands of other prisoners.'" Bistrian v. Levi, 696 F.3d 352, 366 (3d Cir. 2012), abrogated on other grounds by Mack v. Yost, 968 F.3d 311 (3d Cir. 2020) (quoting Farmer v. Brennan, 511 U.S. 825, 833 (1994)).  However, not "every injury suffered by one prisoner at the hands of another…translates into constitutional liability for prison officials responsible for the victim's safety." Farmer, 511 U.S. at 834.  To state a viable failure-to-protect claim under the Eighth Amendment, a plaintiff

8

must plead facts to support that: (1) he was incarcerated under conditions posing a substantial risk of serious harm; (2) the defendant was deliberately indifferent to that substantial risk; and (3) the defendant's deliberate indifference caused the plaintiff to suffer harm.  Bistrian, 696 F.3d at 367.  The standard for deliberate indifference is subjective; thus, "the prison official—defendant must actually have known or been aware of the excessive risk to inmate safety."  Beers-Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001).  The facts alleged in Rosario's amended complaint do not satisfy this standard.

Rosario has not sufficiently alleged a failure to protect claim against the moving defendants.  The amended complaint does not allege that the moving defendants had prior knowledge that Rosario was in danger of being harmed by his cellmate.  (See Doc. 36).  Rosario does not assert that he had any communication with the moving defendants about his personal safety.  Nor does he indicate that the alleged assault by his cellmate was the product of "longstanding, pervasive, well-documented, or previously noted tensions between" Rosario and the other inmate—he does not allege that the cellmate had violent tendencies or that he had a prior history of conflict with the cellmate. Blackstone v. Thompson, 568 F. App'x 82, 84 (3d Cir. 2014).  In fact, Rosario acknowledges that he was not threatened by his cellmate; rather, he asserts that

9

the threats originated from "other prisoners in the general population." (Doc. 36, at 4-5). Rosario's general fear for his safety does not establish a substantial risk of serious harm. Nothing in the amended complaint supports a reasonable inference that defendants were aware of, and deliberately indifferent to, "any specific incident or cause of tension between the cellmates from which a greater inference of risk could be drawn." Id. (emphasis added).

Rosario also failed to allege any facts suggesting that the moving defendants were personally involved in the alleged wrongful conduct. (See Doc. 36). Individual liability can be imposed under Section 1983 only if the state actor played an "affirmative part" in the alleged misconduct and "cannot be predicated solely on the operation of respondeat superior." Evancho, 423 F.3d at 353 (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1998)). "A defendant in a civil rights action must have personal involvement in the alleged wrongs...Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode, 845 F.2d at 1207-08; see also Rizzo v. Goode, 423 U.S. 362 (1976); Atkinson v. Taylor, 316 F.3d 257 (3d Cir. 2003). Such allegations, however, must be made with appropriate particularity in that a complaint must allege the particulars of conduct, time, place, and person responsible. Evancho, 423 F.3d at 354; Rode, 845 F.2d at

10

1207-08.  Alleging a mere hypothesis that an individual defendant had personal knowledge or involvement in depriving the plaintiff of his rights is insufficient to establish personal involvement.  Rode, 845 F.2d at 1208.  Rosario fails to set forth any allegations that the moving defendants were actually aware of the risk of assault by his cellmate.  Rosario only alleges that defendant Wooster ordered his placement in administrative custody to protect him from alleged threats by inmates in general population.  (Doc. 36, at 3-4).

To the extent Rosario seeks to assert a supervisory liability claim against defendant Salamon based merely on allegations that she supervised individuals at SCI-Rockview, he cannot do so because liability under Section 1983 cannot be predicated on respondeat superior.  See Chavarriaga v. N.J. Dep't of Corr., 806 F.3d 210, 227 (3d Cir. 2016) ("[Plaintiff] cannot predicate liability on her § 1983 claims on a respondeat superior basis." (citing Rode, 845 F.2d at 1207) (emphasis omitted)); Robinson v. Delbalso, No. 22-2378, 2022 WL 17248100, at *2 (3d Cir. Nov. 28, 2022) ("We agree with the District Court that Robinson's second amended complaint did not state a plausible claim for relief.  First, he failed to allege the defendants' personal involvement, and he cannot predicate liability on his § 1983 claims on a respondeat superior basis." (internal citations omitted)).

11

Instead, if Rosario seeks to hold defendant Salamon liable as a supervisor for unconstitutional acts by her subordinates, his allegations must satisfy one of two theories of supervisory liability: first, "[i]ndividual defendants who are policymakers may be liable under § 1983 if it is shown that such defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm[;]" and second, "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.M. ex rel. J.M.K. v. Luzerne Cnty. Juv. Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted); see Barkes v. First Corr. Med., Inc., 766 F.3d 307, 316 (3d Cir. 2014) (explaining requirements for supervisory liability in section 1983 claim and describing "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates"), rev'd on other grounds sub nom., Taylor v. Barkes, 575 U.S. 822 (2015).

To allege a plausible claim for supervisory liability under the first theory—the policy-and-practice strand of supervisory liability—a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor

12

was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure. Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury.

Chavarriaga, 806 F.3d at 227 (quoting Brown v. Muhlenberg Twp., 269 F.3d 205, 216 (3d Cir. 2001)).

For the second theory of supervisory liability—participating in, directing others to, or knowledge and acquiescence of constitutional violation—generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. See Saisi v. Murray, 822 F. App'x 47, 48 (3d Cir. 2020) ("Saisi asserted that some defendants were in charge of agencies that allowed this to happen, and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of [their] position as the head of the [agency].'" (quoting Evancho, 423 F.3d at 354). Additionally, "[a]lthough a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not

13

constructive." Chavarriaga, 806 F.3d at 222 (citing Baker v. Monroe Twp., 50 F.3d 1186, 1194 (3d Cir. 1995); Rode, 845 F.2d at 1201 n.6).

Rosario's supervisory liability claim fails on two grounds.

First, a supervisory claim requires "a showing that there was an actual constitutional violation at the hands of subordinates" before finding liability on the part of the supervisor prison official. Allen v. Eckard, 804 F. App'x 123, 127 (3d Cir. 2020) (concluding that failure to train and supervise claims asserted against supervisor defendants were meritless where the plaintiff failed to make a plausible showing of an underlying constitutional violation). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." Id.; Chavarriaga, 806 F.3d at 227. Rosario failed to allege an underlying constitutional violation committed by defendant Salamon's subordinates.

Second, Rosario alleges that Superintendent Salamon "was responsible for operating SCI Rockview in a manner which protected the rights of prisoners within the prison." (Doc. 36, at 2). This general allegation is insufficient to state a plausible claim that Superintendent Salamon, acting with deliberate indifference to the consequences, established and maintained a policy, practice

14

or custom which directly caused Rosario to suffer constitutional harm. In a conclusory fashion, Rosario alleges that defendant Salamon "allowed [a] practice and procedure to house prisoners held in administrative custody to be housed with cellmates despite known threats to their safety." (Doc. 36, at 5). Rosario asserts that the prison lacked a policy that required inmates who were threatened by any inmate in the entire prison to always be housed alone. Notably, Rosario does not allege that there was a policy that allowed inmates to be housed with a cellmate who threatened him. Rosario thus fails to plausibly allege that defendant Salamon's alleged policy, or lack of policy, "created an unreasonable risk of [an] Eighth Amendment injury," or that defendant Salamon "was aware that the unreasonable risk was created." Beers-Capitol, 256 F.3d at 134.

For all these reasons, the court will grant the moving defendants' motion to dismiss the Eighth Amendment claim.

B.    Fourteenth Amendment Equal Protection Claim

The Equal Protection Clause of the Fourteenth Amendment states that no state may "deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. The Equal Protection Clause "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985) (citing Plyler v.

15

Doe, 457 U.S. 202, 216 (1982)).  "[T]o bring a successful equal protection claim, plaintiffs 'must demonstrate that they received different treatment from that received by other individuals similarly situated.'"  Children's Health Defense, Inc. v. Rutgers, the State Univ. of N.J., 93 F.4th 66, 84 (3d Cir. 2024) (quoting Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 196 (3d Cir. 2009)).  At the pleading stage, a plaintiff must make nonconclusory allegations that he and the similarly situated individuals who were allegedly treated differently from him are "alike 'in all relevant respects.'"  Id. (quoting Harvard v. Cesnalis, 973 F.3d 190, 205 (3d Cir. 2020)).

There are simply no allegations in the amended complaint that Rosario was treated differently from any similarly situated individuals.  (See Doc. 36).  Other than a one-line reference to the equal protection clause (id. at 5), the amended complaint is devoid of any allegations to establish that any other inmates, who were treated differently from him, were "alike in all relevant respects" to Rosario. Children's Health Defense, Inc., 93 F.4th at 84.  Accordingly, Rosario has failed to allege the existence of similarly situated individuals, and the court will grant the moving defendants' motion to dismiss the equal protection claim.

16

C.    Remaining Defendants

While defendants Roe, Bailer, Cessna, Rowe, Woodring, T. Miller, C. Miller, Hoover, and John Doe have not filed motions to dismiss, the court will sua sponte dismiss the claims against them as well.  "The District Court has the power to dismiss claims sua sponte under Rule 12(b)(6)."  Bintliff-Ritchie v. Am. Reinsurance Co., 285 F. App'x 940, 943 (3d Cir. 2008) (citing Bryson v. Brand Insulations, Inc., 621 F.2d 556, 559 (3d Cir. 1980)); see also Kline v. Hall, 2012 WL 6137620, at *10-11 (M.D. Pa. Dec. 11, 2012) (deciding, after dismissing a claim against certain defendants, that the same claim should also be dismissed sua sponte against the remaining defendant even though he failed to challenge the claim in his motion to dismiss).

For the same reasons above, the claims against the remaining defendants will be dismissed, i.e., (1) Rosario failed to plausibly allege that he was subjected to a substantial risk of serious harm by being housed with a cellmate, where the cellmate himself never threatened Rosario and was not alleged to have any violent tendencies, and Rosario failed to show that defendants were deliberately indifferent to a substantial risk of serious harm; and (2) Rosario failed to allege that he was treated differently than individuals similarly situated in violation of his right to equal protection.

17

## IV.    Leave to Amend

Having determined that Rosario's claims are subject to dismissal, the court must decide whether to grant him leave to file a second amended complaint. Although district courts should generally give leave to amend, they may dismiss a complaint with prejudice where leave to amend would be inequitable or futile. See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007) ("[I]n civil rights cases district courts must offer amendment— irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."); Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) ("When a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that [they have] leave to amend within a set period of time, unless amendment would be inequitable or futile."). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." In re Burlington, 114 F.3d at 1434.

In this case, the court previously granted Rosario leave to file an amended complaint in an attempt to cure his pleading deficiencies. He has failed to do so. The court thus concludes that granting Rosario leave to file a second amended complaint would be both futile and inequitable. See Jones v. Unknown D.O.C.

18

Bus Driver & Transp. Crew, 944 F.3d 478, 483 (3d Cir. 2019) (amendment by pro se litigant would be futile when litigant "already had two chances to tell his story").

## V.    Conclusion

For the foregoing reasons, the court will grant the moving defendants' motion (Doc. 37) to dismiss.  Additionally, the claims against the remaining defendants will be dismissed sua sponte.  An appropriate order shall issue.

BY THE COURT:

_____
JUDGE JULIA K. MUNLEY
United States District Court

Dated:    May 28, 2026

19